Donahue, J.
While the petition of the relator contains several causes of action, yet it is predicated solely upon the claim that the act of March 21, 1917 (107 O. L., 732), entitled “An act to provide a court of domestic relations for Lucas county, Ohio, and prescribing the jurisdiction of said court,” is in conflict with several provisions of the Constitution of Ohio.
It is contended by the relator that the provision of the act authorizing judges of the court of common pleas and the judge of the probate court of Lucas county to select by majority vote one of themselves to act as the judge of the court of domestic relations until the first day of January, *44 1921, is in conflict with Section 10 of Article IV of the Constitution, which provides that “All judges, other than those provided for in this constitution, shall be elected by the electors of the judicial district for which they may be created.”
This provision of the act contemplates the selection, as acting judge of the court of domestic relations, of a judge who has been elected by the electors of the judicial district for which this court was created.
In the case of Logan Branch Bank, Ex-parte, 1 Ohio St., 432, 434, cited by counsel for relator, it was held that, “It is not within the competency of the Legislature to clothe with judicial power any officer or person, not elected as a judge.”
Clearly this act does not attempt to do this, but, on the contrary, provides that the person to be selected as acting judge of the Court of Domestic Relations for Lucas County must be a person elected as judge by the electors of that county.
In the cases of State, ex rel., v. Yeatman and State, ex rel., v. Bundenthal, 89 Ohio St., 44, this court held that the provisions of the acts creating municipal courts for Cincinnati and Dayton, designating the then judge of the police court of each of these cities to act as the presiding judge of the municipal court during his term of office, are constitutional.
This question was fully considered by this court in the case of Ide v. The State, 95 Ohio St., 224. It is therefore unnecessary to repeat the reasons given for the judgment entered by this court in that case.
*45 This provision is not in conflict with Section 10 of Article IV of the Constitution.
Nor does this provision offend against Section 14 of Article IV of the Constitution, which provides, among other things, that the judges of the court of common pleas shall receive no fees or perquisites, nor hold any other office of profit or trust, under the authority of this state, or of the United States. On the contrary, the judge so selected is merely assigned as acting judge, to exercise the jurisdiction conferred by this act upon the judge of the Court of Domestic Relations for Lucas County. His assignment as acting judge of that court is clearly not in conflict with the spirit, meaning, and intent of the provisions of Section 14 of Article IV.
It is averred in the petition that this act is in conflict with that part of Section 16 of Article II of the Constitution which provides that no bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended unless the new act contains the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed.
It is the purpose of this act to provide a court of domestic relations for Lucas county, Ohio, and to prescribe the jurisdiction of that court. Under no construction of this act could it be held to amend or revive any of the sections found in Chapter 8, Title IV, Part First, of the General Code. If it affects in any particular the sections found in that chapter it is by the repeal of such parts thereof, *46 if any, as may be inconsistent with the provisions of this act. Therefore the subject of the act is clearly expressed in its title, as required by Section 16 of Article II of the Constitution of Ohio.
The contention of the relator that this act is in conflict with the provisions of Section 26 of Article II of the Constitution, which provides that all laws, of a general nature, shall have a uniform operation throughout the state, is far more serious than any of the other constitutional objections urged against it.
In so far as it creates this court of domestic relations for Lucas county, and prescribes and defines the jurisdiction of that court, it is not a law general in its nature, and therefore does not require uniform operation throughout the state.
Section 1 of Article IV vests in the general assembly of Ohio authority to establish by law courts inferior to courts of appeals. This provision of the constitution was adopted after the decision of this court in the case of State, ex rel., v. Bloch, 65 Ohio St., 370, holding that similar language in the Constitution of 1851 vested in the general assembly “full power to determine what other courts it will establish, local, if deemed proper, either for separate counties or districts, and to define their jurisdiction, and powers.” When this provision was written into the amendment of 1912, and adopted by the electors of the state, it was done with the knowledge of the construction given it by this court. It must have been the intention not only of the constitutional convention, but of the electors adopting it, that the same con *47 struction would obtain; otherwise the language would have been changed to indicate a different intent and purpose.
This court has since that time sustained similar acts creating local courts. See State, ex rel., v. Yeatman, and State, ex rel., v. Bundenthal, supra; Kelley v. State, ex rel., 94 Ohio St., 331, and In re Hesse, 93 Ohio St., 230.
This question was also involved, but not discussed, in the case of State, ex rel., v. Archibald, 52 Ohio St., 1.
The vice, if any, in this act, is the attempt to confer exclusive jurisdiction upon the Court of Domestic Relations for Lucas County “in and over all matters or proceedings, actions and causes that are now or may hereinafter be within the jurisdiction conferred on a juvenile court or a juvenile judge or judges of the juvenile court, by chapter 8, title 4, part one, or under Section 11181-1 of the General Code of this state including the granting of allowance for the partial support of women who are poor and have children to support as provided in said chapter 8, of said juvenile court act.”
If this provision means that the jurisdiction conferred is exclusive only of the jurisdiction of the juvenile court or a juvenile judge or judges of the juvenile court, then perhaps it does not offend against Section 26 of Article II of the Constitution; but if this language must be construed to divest the common pleas court of Lucas county of the jurisdiction conferred by laws of a general nature upon the common pleas courts of this state, then this provision of the act is unconstitutional and void.
*48 Section 4 of Article IV of the Constitution authorizes the general assembly of Ohio to confer by law jurisdiction upon the courts of common pleas. In the case of Kelley v. The State, 6 Ohio St., 269, it was held by this court (page 272) that laws “which relate to and regulate their organization and jurisdiction are laws of a general nature, and are imperatively required to have a uniform operation throughout the state. They can not be withdrawn from the operation of the plain constitutional prohibition, unless by an exemption contained in the same instrument.” To the same effect is the holding of this court in the case of Meyer v. Dempsey, Trustee, 62 Ohio St., 637.
Section 8 of Article IV of the Constitution, which relates to the jurisdiction of the probate courts, specifically provides that, in addition to the jurisdiction conferred upon these courts by the Constitution itself, they shall have such other jurisdiction, in any county or counties, as may be provided by law. This is in accord with the judgment of this court in the case of Kelley v. The State, supra. There is no such exemption found in the Constitution as to common pleas courts.
Section 4, Article IV of the Constitution, was not amended September 3, 1912. In view of the fact that this provision of the Constitution of 1851 was construed by this court in Kelley v. The State and Meyer v. Dempsey, Trustee, supra, prior to the adoption of the amendments in 1912, it follows that it was not the purpose to change this section as construed by this court; otherwise it would have been so amended as to express such intention. *49 Therefore, the construction by this court of this section, in the two cases just mentioned, is approved and followed.
Whenever it is possible to do so, a court will construe an act of the general assembly in harmony with constitutional provisions, but this provision of the act now under consideration does not seem to be possible of such construction.
It is true that nothing is said in relation to the jurisdiction of the common pleas court, but the Court of Domestic Relations for Lucas County is given exclusive jurisdiction in and over all matters or proceedings, actions or causes, that are now or may hereafter be within the jurisdiction or conferred upon a juvenile court, or juvenile judge or judges of the juvenile court, by Chapter 8, Title IV, Part First. That chapter confers concurrent jurisdiction on the common pleas and the juvenile courts, and it would be a strained construction to hold that this language means that the Court of Domestic Relations for Lucas County shall exercise this jurisdiction, exclusive only of the juvenile court, and that the jurisdiction of the court of common pleas in Lucas county shall not be affected thereby.
On the contrary, we are forced to the conclusion that the language permits of no interpretation or construction other than that the Court of Domestic Relations for Lucas County shall exercise this jurisdiction to the exclusion of all other courts in that county. For this reason, this provision of the act of March 17,1917, conferring exclusive jurisdiction on that court, is clearly in conflict with Section 26 of Article II of the Constitution.
*50 The only remaining question is whether this conclusion requires this court to hold the entire act unconstitutional. In the case of Meyer v. Dempsey, supra, the majority of the court held the entire act unconstitutional for this reason.' Davis, J., dissented from the judgment announced by the majority of the court, for the reason that, in his opinion, “the act is valid as conferring jurisdiction concurrent with the probate and common pleas-courts.” That act, however, was merely an amendment of two sections of the original act establishing a court of insolvency in Hamilton county. The main purpose and intent of the amendment was to confer exclusive jurisdiction on that court over the particular matters named therein, and, of course, where the principal purpose and intent.of an act fail by reason of its unconstitutionality, the minor provisions must also fall; for there would be no presumption that the general assembly intended to enact the law regardless of the unconstitutionality of the part relating to its major purpose. But here we have the original act establishing a court of domestic relations in Lucas county. The establishment of this court was undoubtedly the main purpose and intent of the legislature. Undoubtedly the legislature would have passed this act and created this court even had it known that it could not confer jurisdiction upon it over these subjects to the exclusion of the jurisdiction of the common pleas court of that county. Little Miami Rd. Co. v. Commissioners, 31 Ohio St., 338.
While the jurisdiction of a court is not merely a minor Retail in relation to its establishment, never *51 theless this act does confer full and complete jurisdiction over the subject-matters mentioned therein. The entire act should not be held invalid merely because the attempt to make that jurisdiction exclusive of the jurisdiction of the common pleas court of Lucas county is unconstitutional.
This act is unconstitutional in so far as it purports to confer such exclusive jurisdiction, but it is valid as conferring jurisdiction concurrent with the common pleas court of that county.
This act contains a further provision requiring that “Whenever any magistrate or court having jurisdiction in any cause, proceeding or prosecution shall find the controversy to be within the jurisdiction conferred upon the court of domestic relations, whether said cause or proceeding be civil or criminal, such magistrate or court shall immediately certify such cases to the court of domestic relations and proceed no further therein.”
If this provision is mandatory, then it is equally objectionable to Section 26 of Article II, for it would in effect deprive the common pleas court of Lucas county of jurisdiction conferred upon it by the general laws of this state. It is, however, a mere detail in furtherance of the exercise of the jurisdiction conferred upon the court of domestic relations, and similar provisions, not purporting, however, to be mandatory, are found in the several acts creating local courts, which acts have been held constitutional by this court.
It was probably not the intention of the legislature that this should apply to the court of appeals of Lucas county, but only to the courts named in Chap *52 ter 8, Title IV, Part First. However, the language would seem to be broad enough to include the court of appeals, at least in habeas corpus, but as to that court it can have no effect whatever. Cincinnati Polyclinic v. Balch, 92 Ohio St., 415, and Wallace v. Leiter, 76 Ohio St., 185.
Neither can the mandatory provisions thereof apply to the common pleas court of Lucas county, but as to that court it must be held to be directory only.
It is also urged that the provision in Section 3 of this act, conferring jurisdiction on the court of domestic relations to transfer and certify any such case and cause for trial to any judge of the common pleas court or magistrate or other judge of said county having jurisdiction of the subject-matter, whether such cause was originally commenced in said court or certified thereto, is unconstitutional because the statute confers the jurisdiction upon the common pleas court and not upon the judge thereof.
If this language is to be taken literally, then it . means nothing in so far as certifying to a judge of the common pleas court is concerned, and cannot affect the constitutionality of the act one way or the other. But we think that a fair construction of this means that the court of domestic relations shall-have jurisdiction to transfer and certify any such case or cause for trial to the common pleas court or magistrate or other judge in said county having jurisdiction of the subject-matter.
So far as the disposition of this case is concerned, it is unimportant whether it be given this construe *53 tion, or a literal construction that would make the whole provision inoperative in so far as certifying to a judge of the common pleas court is concerned.
It is further insisted that the act is unconstitutional because it does not provide for a jury trial. Clearly the jurisdiction conferred in this act is to be exercised in the manner and form provided by Chapter 8, Title IV, Part 'First, of the General Code. Section 1651, General Code, which is a part of that chapter, provides for a jury trial in proper cases.
The conclusion reached by this court in reference to the unconstitutionality of that part of the act purporting to confer exclusive jurisdiction upon the court of domestic relations, yet sustaining the constitutionality of the other provisions of the act, practically eliminates the constitutional objections considered in the earlier part of this opinion. The jurisdiction of the common pleas court not having been affected by this act, the authority conferred to select one of the judges of that court as acting judge of the court of domestic relations certainly is not in conflict with Sections 10 or 14 of Article IV, for these judges are elected by the electors of the judicial district to exercise judicial power, including the identical jurisdiction conferred upon the court of domestic relations, and the act in question does not divest the common pleas court of that jurisdiction nor interfere with its exercise, in any manner or form provided by law. Nor does the assignment or selection of a judge of the common pleas court to preside over the court of domestic relations increase or diminish his judicial authority, *54 or constitute another “office of profit or trust, under the authority of this state.”
The demurrer to relator’s petition presents the further questions — whether prohibition is the proper remedy, and the right of the relator to bring this action. In view of our conclusion touching the constitutionality of this act, it becomes unnecessary to consider these questions. In any event, the writ must be refused, and the petition of the relator dismissed.

Judgment for respondents.

Nichols, C. J., Wanamaker, Newman, Jones, Matthias and Johnson, JJ., concur.